UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff-Respondent, )<br>v. )<br>)<br>ANTHONY ROBINSON, )<br>)<br>Defendant-Petitioner. ) | Case No. 13-cv-4126<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Petitioner Anthony Robinson is currently serving concurrent sentences of 360 months and 120 months for violating 21 U.S.C. § 846 and 18 U.S.C. § 666(a)(2). Robinson has moved, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. For the reasons stated below, Robinson's § 2255 Motion is denied.

## BACKGROUND[1]

On March 23, 2006, Anthony Robinson and his cousin, Darryl Bennett, were pulled over during a traffic stop by the Chicago police. After searching the two men, Officer James Weyforth confiscated more than $3,800 but found no drugs. Robinson unsuccessfully tried to bribe Officer Weyforth by suggesting that Officer Weyforth keep half of the money and that everything would "be all good." (*United States v. Robinson*, Case No. 06-cr-850, Trial Transcript ("Tr.") 28.) Officer Weyforth reported the bribe offer to his supervisor, and the police set up a sting operation for Officer Weyforth to re-approach Robinson about the bribe.

Robinson and Officer Weyforth subsequently met, during which time Robinson offered to pay the officer weekly to "get the heat off" of Robinson's drug activity. (Tr. 38-40, 54-55.)

---

[1] The Seventh Circuit also summarized these facts in its opinion, *United States v. Robinson*, 663 F.3d 265 (7th Cir. 2011).

1

Robinson also offered to pay Officer Weyforth "extra" if Officer Weyforth could bring narcotics to Robinson. (Tr. 58-59.) Robinson directed Officer Weyforth to make contact with Robinson through his cousin, Bennett, to obtain the bribe money. (Tr. 52, 54.)

Over the next several weeks, Robinson and Officer Weyforth continued to meet to discuss obtaining narcotics and the bribery arrangement. (Tr. 159, 162.)[2] Both Robinson and Bennett, acting on Robinson's behalf, paid Officer Weyforth bribe money. (Tr. 121-22; 155.) During this time, Officer Weyforth told Robinson that he would sell him two kilograms of cocaine for $5,000 per kilo. On May 3, 2006, Robinson and Officer Weyforth met, and Robinson paid $5,000 for the two kilos, agreeing to pay the rest later. (Tr. 215-17.) Immediately following the exchange, officers arrested Robinson.

Robinson was indicted on two counts: federal-funds bribery, in violation of 18 U.S.C. § 666(a)(2), and attempt to possess 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 846. On April 28, 2008, Robinson proceeded to trial before a jury and testified on his own behalf. Robinson admitted that he had paid Officer Weyforth bribes, but claimed that he did so out of fear that Officer Weyforth would plant drugs on him and arrest him if he did not cooperate. (Tr. 325.) After a three-day trial, Robinson was convicted on both counts. This Court sentenced Robinson to concurrent prison terms of 360 months for the drug possession and 120 months for the bribery. The Seventh Circuit affirmed Robinson's conviction on direct appeal.

---

[2] During the meetings, Officer Weyforth was equipped with audio and video recording devices that recorded the interactions between him, Robinson and Bennett. These recordings were played for the jury throughout the trial, and transcripts were provided to the jury of the audio portions of the recordings. (*See*, *e.g.,* Tr. 33, 34, 66, 155, 195, 197-99, 202, 206-07, 225-26; Gov't Exh. Transcripts 1-15; Gov't Exh. Discs 1-A (video), 1-B (audio), 4-A (video), 4-B (audio), 5-A (video), 5-B (audio).)

2

Robinson has now filed the instant *habeas* petition, asserting six claims of ineffective assistance of counsel based on the following grounds: (1) failure to investigate, interview or subpoena Bennett; (2) failure to investigate an entrapment defense; (3) failure to challenge the sufficiency of the indictment; (4) introduction of improper evidence and prejudicial statements during trial; (5) failure to challenge jurisdiction; and (6) failure to object to the use of false testimony.

## **LEGAL STANDARD**

Historically, *habeas corpus* relief has been viewed as "an extraordinary relief, 'a bulwark against convictions that violate fundamental fairness.'" *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (quoting *Engle v. Isaac*, 456 U.S. 107, 126 (1982)) (other internal citations omitted); *see also Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (relief under § 2255 is "reserved for extraordinary situations."). Section 2255 allows a prisoner to move to vacate, set aside, or correct his or her sentence if "the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). The district court must review the record and draw all reasonable inferences in favor of the government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992).

Claims of ineffective assistance of counsel are reviewed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, a petitioner must show both: (1) that counsel's performance fell below an objective standard of reasonableness under the circumstances and (2) that the deficient performance prejudiced the defendant. *Id.* at 688-94. To establish prejudice, the petitioner must prove there is a reasonable probability the proceeding would have had a different result but for the errors of counsel. *Id.* at 694. If a petitioner fails to

make a proper showing under one of the *Strickland* prongs, the court need not consider the other. *See Strickland*, 466 U.S. at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . .").

A district court's "review of the attorney's performance is 'highly deferential' and reflects 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (citation omitted); *see also Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) ("Defense counsel is strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.").

## **ANALYSIS**

*Failure to Investigate, Interview or Subpoena Bennett*

Robinson first argues that his defense trial counsel, Ronald Clark, was ineffective for failing to interview or call as a witness Robinson's cousin, Bennett, in support of Robinson's coercion defense. Robinson contends that Bennett would have corroborated that Robinson was harassed by Officer Weyforth to set up a meeting and to begin a drug operation, that Officer Weyforth demanded money and threatened to plant drugs on Robinson, and that Robinson did not agree to meet with Officer Weyforth until he offered to sell the cocaine. In support, Robinson offers his own affidavit, as well as an affidavit from Bennett, who states that he was threatened and harassed by Officer Weyforth. (*See* Pet.'s *Pro Se* Mem. in Supp. of Mot., Dkt. No. 3-1, pp. 7-14, 16-24.)

Addressing Robinson's theory of coercion on appeal, the Seventh Circuit explained that to prove coercion, Robinson was required to establish: "(1) a fear of immediate death or serious bodily harm unless he committed the offense; and (2) no reasonable opportunity to refuse to commit the offense and avoid the threatened injury." *Robinson*, 663 F.3d at 269 (citing *United States v. Sawyer*, 558 F.3d 705, 711 (7th Cir. 2009)). The Seventh Circuit held that Robinson did not establish either element. Robinson's fear that Officer Weyforth would plant drugs on him was "hardly a present, immediate, or impending threat of injury or death, and Robinson had a reasonable opportunity to refuse to commit the crimes at any time during the six-week duration of his contact with Weyforth." *Id.*

Accordingly, Bennett's proposed testimony that Officer Weyforth was threatening to plant drugs on Robinson would have been insufficient to establish Robinson's coercion defense. This testimony would have been merely cumulative to Robinson's own testimony and would not have established a fear of impending injury or death sufficient to establish coercion. As such, Robinson cannot show that failure to call Bennett as a witness, who would only have provided testimony that was insufficient to establish coercion, prejudiced him.

Likewise, as a co-conspirator who paid bribes to Officer Weyforth, Bennett's testimony would not have been given little, if any, additional weight by the jury. Indeed, Bennett himself was arrested around the same time as Robinson was in 2006 and was charged with drug distribution. Therefore, it was not unreasonable for Robinson's counsel not to call Bennett as an eyewitness. "The Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless the attorney and court believe the witness will add competent, admissible and non-cumulative testimony to the trial record." *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990).

Robinson has not met his burden under *Strickland* to establish that his defense counsel's failure to interview or call Bennett as a witness fell below an objective standard of reasonableness. Robinson has also failed to meet *Strickland*'s second prong that he was prejudiced by his counsel's alleged deficient performance. Therefore, Robinson's claim for *habeas* relief on this ground of ineffective assistance of counsel fails.

*Failure to Investigate an Entrapment Defense*

Robinson next argues that his defense counsel was ineffective for failing to investigate and pursue an entrapment defense. Robinson contends that he specifically requested that his counsel investigate an entrapment defense because he believed that there was evidence to support his defense that the police used pressure tactics and extraordinary inducements.

Robinson's argument fails because his counsel did, in fact, pursue an entrapment defense during the course of the trial. Defense counsel gave a proposed jury instruction on entrapment and later withdrew that instruction. (Tr. 179.) The reason why Robinson's counsel withdrew the instruction is readily ascertainable: Robinson had been previously convicted of possession of a controlled substance with intent to deliver. While on probation for that conviction, Robinson was arrested for possession of cocaine and heroin, pled guilty, and received a sentence of three years of imprisonment. Had Robinson pursued an entrapment defense, the government could have presented this negative history to the jury to show Robinson's predisposition on the drug charge. *See United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir. 1999) ("It is well established that '[f]or a defendant to raise the entrapment defense, he or she must produce evidence of both the Government's inducement and his own lack of predisposition.'") (internal citations omitted). With respect to the bribery charge, the evidence showed that Robinson had

6

offered the initial bribe, and therefore, Robinson also would have failed to establish lack of predisposition. *See id.*

Robinson has not shown that his defense counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "[T]here is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001). Here, Robinson's counsel "merely recommended the withdrawal of what he reasonably believed was a claim doomed to fail." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). Therefore, Robinson has not shown that the failure to pursue an entrapment defense was ineffective assistance of counsel.

*Failure to Challenge the Sufficiency of the Indictment*

Robinson next contends that he received ineffective assistance of counsel because his defense counsel did not challenge the sufficiency of the indictment. Robinson claims that there was not enough evidence for the government to prove the violation of 18 U.S.C. § 666(a)(2) because the allegations did not meet the $5,000 transaction value requirement.

This claim, however, is meritless because Robinson's defense counsel did challenge the sufficiency of the indictment in a post-trial motion, which this Court denied. (*See* Docket #101 at 1-2.) Robinson also challenged the sufficiency of the indictment on appeal. Rejecting this claim, the Seventh Circuit held that "the evidence was sufficient to permit a rational juror to find that the government carried its burden of proof on the transactional element of the § 666(a) offense." *Robinson*, 663 F.3d at 276. As this claim has already been ruled on and rejected on its merits, it cannot serve as a ground for *habeas* relief. *See White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) ("Invoking the doctrine of the law of the case, the courts, including our court,

7

forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal.").

*Introduction of Improper Evidence*

Robinson also argues that his defense counsel was ineffective because he introduced videotape footage of Robinson's arrest and also fronted impeachment of Robinson's prior convictions. Robinson argues that this evidence had a prejudicial effect because it may have led the jury to believe that Robinson was a dangerous individual.

Both of these evidentiary decisions by Robinson's defense counsel fall within the bounds of reasonable defense strategies. With respect to the videotape, defense counsel explained to the Court at sidebar that the evidence was probative of the issue of coercion because it showed that the officers used force against Robinson. (Tr. 130-31.) The Court accepted the defense counsel's rationale and permitted him to introduce it. Because this decision was part of a reasonable trial strategy, Robinson has failed to show counsel's performance fell below the objective standard of reasonableness, as required under *Strickland*.

Robinson further contends that his defense counsel was ineffective because he fronted to the jury Robinson's prior conviction for attempted murder. However, it is common and accepted strategy to front impeachment of a prior conviction on direct examination in order to remove the "sting" of that evidence being brought up during cross-examination. *See United States v. LeFevour*, 798 F.2d 977, 983-84 (7th Cir. 1986). Because Robinson took the stand to testify, he put his credibility at issue, and the government would have been able to ask Robinson about his prior convictions. *See United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir. 1996) (holding that because the defendant "took the stand and testified on his own behalf, he put his credibility at

issue, and therefore the government's attack on his credibility under Rule 608(b) was proper").[3] Therefore, defense counsel's decision to front this conviction does not fall outside the "wide range" of reasonable defense strategies. *See Valenzuela*, 261 F.3d at 698-99.

Furthermore, Robinson cannot show that these tactical decisions prejudiced him. At trial, the government presented video and audio recordings of Robinson's discussions with the police, including conversations where he bribes the police and where he negotiates the purchase of the drugs. Robinson also admitted during his testimony that he had tried to bribe the police and had agreed to purchase the cocaine. His entire defense centered on coercion, but, in light of the government's overwhelming evidence, Robinson was unable to persuade the jury of that defense. Even if his defense counsel's decisions were objectively deficient, Robinson has not shown that he was prejudiced by those decisions, as required by *Strickland*. Therefore, his claim of ineffective assistance of counsel fails on this ground as well.

*Failure to Challenge Jurisdiction*

Robinson also contends that his defense counsel rendered ineffective assistance by failing to challenge the jurisdiction of this Court based on a violation of the Tenth Amendment. Robinson claims that the two-count indictment against him breaches the Tenth Amendment's protection of state sovereignty. Robinson argues that the two statutes underlying his indictment, 18 U.S.C. § 666(a)(2) and 21 U.S.C. § 846, are beyond the federal government's enumerated

---

[3] Immediately after Robinson testified to his prior conviction, the Court read a jury instruction to the jurors to "consider this evidence only in deciding whether Mr. Robinson's testimony is truthful in whole, in part or not at all. You may not consider it for any other purpose. A conviction of another crime is not evidence of Mr. Robinson's guilt of any crime for which he is now charged." (Tr. 329.) This instruction was also included in the written instructions provided to the jury. (*See United States v. Robinson*, Case No. 06-cr-850, Dkt. No. 77, p. 11.) When a jury instruction is given, "[j]uries are presumed to follow all instructions given by the court." *Harding v. Sternes*, 380 F.3d 1034, 1046 (7th Cir. 2004) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)).

powers and inconsistent with the Tenth Amendment because there are state laws on the crimes of possession of cocaine with the intent to distribute and bribery.

"An action is frivolous and without merit if petitioner cannot make a rational argument on the law or facts to support his claim." *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir. 1983). There is no argument on the law or facts that can be made to support a claim that being charged with federal-funds bribery and attempting to possess 500 grams of cocaine violates the Tenth Amendment. Robinson has not demonstrated ineffective assistance of counsel on this ground.

*Failure to Object to the Use of False Testimony*

Finally, Robinson argues that his defense counsel failed to object to "false" testimony introduced by the government. At trial, Officer Weyforth testified that the packages delivered to Robinson during the sting did not contain actual cocaine, but rather, a white powder substance used as a "prop" for cocaine. Robinson contends that this testimony was false because, after trial, Robinson received a laboratory report showing that the packages contained real cocaine. (Pet. Mem. at 52.) Robinson contends that this testimony discredited Robinson's coercion defense and his fear of having drugs planted on him.

The claim is meritless. First, as discussed above, Robinson's fear of being planted with drugs was insufficient to establish a coercion defense. *Robinson*, 663 F.3d at 269. Therefore, even if his defense counsel had objected to the false testimony, it would not have changed the fact that Robinson could not establish that he had a fear of death or serious bodily injury based on the drugs.

Second, it was irrelevant to the case whether or not the substance being exchanged was real because Robinson was charged with attempted possession.

> Intent to obtain delivery of an illicit drug is a key element of the crime of attempted possession, and that intent may exist even where there are no drugs to be had. If, for example, "an individual with the intent to obtain [a controlled substance] is duped into buying a faked substance, his intent to obtain the actual substance is established nonetheless.

*United States v. Weaver*, 8 F.3d 1240, 1243-44 (7th Cir. 1993) (quoting *United States v. Dominguez*, 992 F.2d 678, 682 (7th Cir. 1993)). Therefore, it was not necessary for the government to prove that the substance was cocaine; rather, what was important for this charge was that the substance Robinson was purchasing appeared to be cocaine. Furthermore, during his cross-examination of Officer Weyforth, Robinson's defense counsel effectively established that the substance was cocaine:

> Q. In the end you have -- you obtained this cocaine from your office, did you not?
>
> A. Yes, I did, from my supervisors, that obtained it from a recovered evidence property locker.
>
> Q. You have no idea where this cocaine came from originally, do you?
>
> A. I know it came from our police ERPS, you know, Evidence and Recovered Property Section.

Tr. 261.

Accordingly, Robinson cannot demonstrate that he suffered any prejudice as a result of Officer Weyforth's "false" testimony and has not demonstrated ineffective assistance of counsel on this ground either.

### *Certificate of Appealability*

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If the court denies a certificate, a party may not appeal the denial but may seek

a certificate from the court of appeals under Federal Rules of Appellate Procedure 22. Seventh Circuit Rule 22(b) states: "In a *habeas corpus* proceeding in which detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability under § 2253, a petitioner must demonstrate the denial of a constitutional right. This requires the petitioner to show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 120 S. Ct. 1595, 1603–04 (2000). Where the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.* at 1604. As discussed above, Robinson has not demonstrated that his counsel behaved unreasonably and did not show a possibility of prejudice under the *Strickland* test. Therefore, Robinson has not demonstrated the denial of a constitutional right with respect to his ineffective assistance claim. Accordingly, a certificate of appealability shall not issue.

## **CONCLUSION**

For all the reasons discussed above, Robinson's 28 U.S.C. § 2255 Motion to vacate, set aside, or correct his sentence is denied.

Date:    August 20, 2014                                                 
JOHN W. DARRAH
United States District Court Judge